# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# CHATTANOOGA DIVISION

| | |
|---|---|
| MCKENZIE GODWIN,<br><br>    Plaintiff,<br><br>v.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA and UNUM GROUP CORP.,<br><br>    Defendants. | Civil Action No. 1:25-cv-27 |

## COMPLAINT FOR RECOVERY OF PLAN BENEFITS AND FOR THE ENFORCEMENT OF RIGHTS UNDER ERISA

COMES NOW, Plaintiff, McKenzie Godwin, and makes the following representations to the Court for the purpose of obtaining relief from Defendants' refusal to pay Long-Term Disability ("LTD") and Life Waiver of Premium ("LWOP") benefits due under an employee benefits plan, and for Defendants' other violations of the Employee Retirement Income Security Act of 1974 ("ERISA"):

## JURISDICTION AND VENUE

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1337 and 29 U.S.C. § 1132(e) (ERISA § 502(e)). Plaintiff's claims "relate to" an "employee welfare benefits plan" as defined by ERISA, 29 U.S.C. § 1001 et seq., and the subject Employee Welfare Benefit Plan constitutes a "plan under ERISA."

2. The ERISA statute, at 29 U.S.C. § 1133, as well as Department of Labor regulations, at 29 C.F.R. § 2560.503-1, provide a mechanism for administrative or internal appeal of benefits denials. In this case, those avenues of appeal have been exhausted and this matter is now properly before this court for judicial review.

3. Venue is proper within the Eastern District of Tennessee pursuant to 29 U.S.C. § 1132(e)(2).

**PARTIES**

4. Plaintiff, McKenzie Godwin, (hereinafter "Plaintiff"), was at all relevant times, and is currently a resident of Utah County, Utah.

5. Defendant Unum Life Insurance Company of America ("Unum Life") is the underwriter of group LTD insurance policy number 869123 002, issued to Plaintiff's former employer, Weave Communications, Inc., and is the party obligated to pay benefits and to determine eligibility for LTD benefits under the Plan.

6. Defendant Unum Life Insurance Company of America ("Unum Life") is the underwriter of group Life Insurance policy number 869123 001, issued to Plaintiff's former employer, Weave Communications, Inc., and is the party obligated to pay benefits and to determine eligibility for Life Insurance benefits under the Plan.

7. Unum Life is an insurance company authorized to transact the business of insurance in this state, and may be served with process through the Commissioner of the Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway, Nashville, Tennessee 37243-1131.

8. Defendant Unum Group Corporation ("Unum Group") is the parent company of Defendant Unum Life.

9. Defendant Unum Group exercises significant control over the policies and actions of Defendant Unum Life.

10. Defendant Unum Group is the employer of all persons who acted on behalf of Unum Life.

11. Defendant Unum Group may be served with process by and through its registered agent for service, Corporation Service Company, 2908 Poston Avenue, Nashville, TN 37203.

**FACTS**

12. Plaintiff was employed by weave Communications as the Director of Customer Success Management.

13. Weave Communications maintained a LTD benefits plan ("the Plan") for the benefit of its employees.

14. Weave Communications maintained a life insurance benefit plan for the benefit of its employees.

15. LTD benefits under the Plan were funded by Unum Life policy number 869123 002.

16. Life Insurance benefits under the Life insurance plan were funded by Unum Life policy number 869123 001.

17. Plaintiff is a participant or beneficiary of the Plan and is covered by the Policy that provides LTD benefits under the Plan.

18. Plaintiff is a participant or beneficiary of the Plan and is covered by the Policy that provides Life Insurance benefits under the Plan.

19. The LTD plan provides that a participant is disabled when:

> You are disabled when Unum determines that: - you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury;** and - you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury. After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience.

20. The Life Insurance plan contains a life waiver of premium benefit ("LWOP"): "Unum does not require premium payments for an insured's life coverage if he or she is under age 60 and disabled for 9 months. Proof of disability, provided at the insured's expense, must be filed by the insured employee and approved by Unum."

21. The Life Insurance plan defines disability as:

You are disabled when Unum determines that:
during the elimination period, you are not working in any occupation due to your injury or sickness; and
- after the elimination period, due to the same injury or sickness, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by training, education or experience.

22. Plaintiff ceased work due to a disability resulting from her medical conditions including Sjogren's syndrome, migraines, and a pituitary tumor among others, on May 28, 2022, while covered under the Plan.

23. Plaintiff has been and continues to be disabled as defined by the provisions of the Plan.

24. Plaintiff timely filed an application for LTD and LWOP benefits under the Plan.

25. Defendants approved that application, and paid benefits until March 22, 2024.

26. As of March 22, 2024, Defendants denied Plaintiff's claim for ongoing LTD benefits, stating that she could perform her own occupation despite her medical conditions.

27. Defendants also denied Plaintiff's LWOP claim on March 22, 2024.

28. Plaintiff filed a timely appeal on September 18, 2024.

29. In support of her appeal, Plaintiff submitted updated medical records from her providers, a migraine tracking report, and articles explaining her conditions.

30. In her September 18, 2024 letter, Plaintiff requested an additional 45 days to submit additional information related to her appeal, and asked that Unum not make its decision until she submitted the information.

31. On September 23, 2024, Unum confirmed receipt of Plaintiff's appeal, and confirmed that it would not begin its review of the information until it received the additional information.

32. Unum's September 23, 2024 letter also requested that Plaintiff submit the additional information by October 23, 2024.

33. In a letter dated October 10, Unum wrote Plaintiff's counsel and explained that Plaintiff's information had been reviewed, and requested that Plaintiff review and respond to the additional information Unum had generated in its review of her LTD and LWOP claims by October 25, 2024.

34. Plaintiff's counsel received Unum's October 10, 2024 letter on October 23, 2024 – two days before the deadline provided in the letter.

35. On October 23, 2024, Plaintiff's counsel responded, explaining that Unum's reviews were untimely, since Unum had agreed not to start its review until Plaintiff had submitted evidence in support of her appeal, or until October 23, 2024.

36. Plaintiff also submitted additional evidence in support of her appeal, including a medical opinion form from Mary Ding, NP, a Cardiopulmonary Exercise Test (CPET) report, Ms. Ding's opinion form agreeing with the results of the CPET, updated medical records, a medical opinion form from Jason Horne, APRN, a medical opinion form from Dr. Michael Peterson, and Ms. Godwin's sworn declaration.

37. The CPET report demonstrated that a sedentary occupation would require more energy than Ms. Godwin could safely sustain.

38. Mr. Horne reviewed the results of the testing and indicated that he agreed with the results of the CPET testing.

39. Ms. Ding reviewed the results of the testing and indicated that she agreed with the results of the testing.

40. Dr. Peterson opined that Ms. Godwin would have a number of vision related restrictions, including the ability to perform two hours of computer use for up to fifteen minutes at a time.

41. On October 29, 2024 Plaintiff's counsel also submitted a vocational rehabilitation assessment from Joseph Atkinson, MS, CRC.

42. On November 7, 2024 Unum requested a 45 day extension beginning on November 7, 2024.

43. On November 8, 2024, Plaintiff's counsel wrote to Unum, explaining that a 45 day extension was not necessary, since Unum had 45 days from October 23, 2024, when Plaintiff submitted her supplemental information, to review the claim.

44. Unum's initial 45 day deadline was December 7, 2024.

45. On November 8, 2024, Unum confirmed that it had begun the appeal review on September 24, 2024 when it received mailed copies of the appeal.

46. Unum also agreed that the initial 45 day deadline was December 7, 2024.

47. On November 26, 2024, Unum provided Plaintiff's counsel with additional information to review and respond to, including an updated medical review from Dr. Greenstein.

48. The November 26, 2024 letter also explained that Unum needed an extension of time beginning on December 7, 2024 because Plaintiff might have information relevant to their review and requested a response within 15 days. (See Exhibit 1).

49. Unum's deadline to make a decision was 45 days from December 7, 2024 or January 21, 2025.

50. On December 11, 2024, Plaintiff's counsel responded to Unum, submitting additional information including one set of medical records, and seventeen exhibits related to Dr. Greenstein and the file reviewing physicians at Unum. (Letter Attached as Exhibit 2).

51. On January 15, 2025, Unum requested an additional 45 day extension to complete another medical review. (Exhibit 3).

52. On January 17, 2025 Plaintiff's counsel responded to Unum, explaining that Unum is allowed one 45 day extension under the Department of Labor's Claim Regulations, which it had already used. (Exhibit 4).

53. Plaintiff's counsel also explained that medical reviews are not a "special circumstance" justifying an extension under the regulations. (See Exhibit 4).

54. Plaintiff's counsel explained that the deadline for Unum's decision was January 21, 2025 and requested that Unum make a decision by that date or provide any additional explanation that justified its need for an extension. (See Exhibit 4).

55. On January 21, 2025, Unum wrote to Plaintiff's counsel that it was proceeding with the medical review. (Exhibit 5).

56. To date, Unum has not made a decision on Plaintiff's LTD or LWOP claim.

57. As a result, Unum has failed to provide a reasonable claims procedure that would yield a timely decision on the merits of both the LTD and LWOP claim.

58. 29 C.F.R. § 2560.503-1(l) states that an ERISA administrator's failure to strictly adhere to all requirements of the regulation with respect to a claim will result in the claimant being deemed denied without the exercise of discretion. *See* 29 C.F.R. § 2560.503-1 (1)-(2).

59. Accordingly, under 29 C.F.R. § 2560.503-1 (1)-(2), Plaintiff pursues her available remedies under § 502(a) of the ERISA on the basis that Unum has failed to provide a reasonable claims procedure that would yield a timely decision on the merits of the LTD and LWOP claims.

60. Plaintiff's administrative remedies under the Plan were deemed exhausted without the exercise of discretion as a result of Unum's violations of 29 C.F.R.. § 2560.503-1 as outlined above.

61. The Plan does not contain an appropriate grant of discretion to Unum and therefore the Court should review Unum's decision under the de novo standard of review.

62. The entities that made the decisions to deny benefits would pay any benefits due out of their own funds.

63. The entities that made the decisions to deny benefits were under a perpetual conflict of interest because the benefits would have been paid out of their own funds.

64. The entities that made the decisions to deny benefits allowed their concern over their own funds to influence their decision-making.

65. Unum's conflict of interest and bias is evident in the fact that it establishes monthly financial targets that encourage and incentivize its claims handlers to terminate a specified number of claims every month.

66. The monthly financial targets for denying claims are called "recovery plans," "recovery guidance," or words to that effect, and are provided by Unum's finance department to Unum's Assistant Vice Presidents and Directors who supervise and conduct claims handling.

67. The monthly targets, or "recovery plans," include the count of total claims that should be recovered.

68. Internal documents reveal that financial targets and goals for claim closures are set at the unit level and that there are goals set for open claim recoveries (i.e., denying an open claim) per day. (See Exhibit 6, Weekly Tracking Reports).

69. In order to receive bonuses under Unum's incentive program, Unum employees are evaluated against certain criteria, which include planned claim terminations, expected liability acceptance rates, and anticipated reopen rates. (see e.g., Exhibit 7, ID Director Scorecards).

70. Plaintiff's counsel recently took the deposition of the Assistant Vice President, Marianne Justin, who was the Unum AVP over the Director and the DBS who evaluated Plaintiff's claim. Ms. Justin confirmed that she received "financial guidance" each month. (See Exhibit 8, selected excerpts from the Deposition of Marianne Justin, p. 47:23-51:6).

71. Ms. Justin also received a Weekly Tracking Report each Monday that contained new financial target numbers for her team. *Id.* at, 103:11-18. Ms. Justin explained that she shares the Weekly Tracking Reports with her team in weekly meetings on each Tuesday. *Id.* at, 80:13-82:21; 99:15-100:22.

72. Directors in AVP Justin's team are expected to be familiar with how the Weekly Tracking Reports are formatted, how they work, and what their data means for their team. *Id.* at, 103:11-105:9.

73. AVP Justin confirmed that whether Unum's AVPs meet the financial metrics is part of their performance evaluation. *Id.* at, 136:9-16.

74. Ms. Justin provided additional testimony and referred to additional documents that are relevant to Unum's conflict of interest, but that testimony and evidence is currently designated "confidential."

75. Defendants targeted Plaintiff's claim for termination in order to meet their financial goals.

76. Defendants' targeting of Plaintiff's claim for denial taints all evidence it developed during the review of her claim as the review was designed to reach the result of a denial, not an impartial weighing of the evidence.

77. Defendants have acted under a policy to take advantage of the potential applicability of ERISA to claims.

78. The Defendants' decision-making process violated ERISA by failing to give the Plaintiff a full and fair review of the claim.

79. The Defendants' decision-making process violated the terms of the applicable ERISA Plans and ERISA law and regulations.

80. The Defendants' decision to deny benefits was wrong under the terms of the Plan.

### FIRST CAUSE OF ACTION
### FOR PLAN BENEFITS AGAINST THE DEFENDANT
### PURSUANT TO 29 U.S.C. §§ 1132(a)(1)(B)

PLAINTIFF incorporates the allegations contained in the prior paragraphs as if fully stated herein and says further that:

81. Under the terms of the Plan, Defendants agreed to provide Plaintiff with LTD benefits in the event that Plaintiff became disabled as defined by the Plan.

82. Plaintiff is disabled and entitled to benefits under the terms of the Plan.

83. Defendants failed to provide benefits due under the terms of the Plan, and these denials of benefits to Plaintiff constitute breaches of the Plan.

84. The decision to terminate benefits were wrong under the terms of the Plan.

85. Defendant's failure to make a timely decision on Plaintiff's LTD Claim despite possessing all information since December 11, 2024, was arbitrary and capricious.

86. The decision to terminate benefits and decision-making processes were arbitrary and capricious.

87. The decisions to deny benefits were not supported by substantial evidence in the record.

88. As a direct and proximate result of the aforementioned conduct of the Defendants in failing to provide benefits for Plaintiff's disability, Plaintiff has been damaged in the amount equal to the amount of benefits to which she would have been entitled to under the Plan.

89. As a direct and proximate result of the aforementioned conduct of the Defendants in failing to provide benefits for Plaintiff's disability, Plaintiff has suffered, and will continue to suffer in the future, damages under the Plan, plus interest and other damages, for a total amount to be determined.

**SECOND CAUSE OF ACTION**
**FOR LIFE INSURANCE PLAN BENEFITS AGAINST THE DEFENDANTS**
**PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)**

Plaintiff incorporates the allegations contained in the prior paragraphs as if fully stated herein and says further that:

90. Under the terms of the Plan, Defendant agreed to provide Plaintiff with LWOP benefits in the event that Plaintiff became disabled as defined by the Life Insurance Policy.

91. Plaintiff is disabled and entitled to benefits under the terms of the Life Insurance Policy.

92. Defendant failed to provide benefits due under the terms of the Life Insurance Policy, and these denials of benefits to Plaintiff constitute breaches of the Plan.

93. Defendant's failure to make a timely decision on Plaintiff's LTD Claim despite possessing all information since December 11, 2024, was arbitrary and capricious.

94. The decision to terminate benefits were wrong under the terms of the Plan.

95. The decision to terminate benefits and decision-making processes were arbitrary and capricious.

96. The decision to deny benefits were not supported by substantial evidence in the record.

97. As a direct and proximate result of the aforementioned conduct of Defendant in failing to provide benefits for Plaintiff's disability, Plaintiff has been damaged in the amount equal to the amount of benefits to which she would have been entitled to under the Plan.

98. As a direct and proximate result of the aforementioned conduct of the Defendant in failing to provide benefits for Plaintiff's disability, Plaintiff has suffered, and will continue to suffer in the future, damages under the Plan, plus interest and other damages, for a total amount to be determined.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant her the following relief in this case:

**On Plaintiff's First Cause of Action**:

1. A finding in favor of Plaintiff against Defendants;

2. Damages in the amount equal to the disability income benefits to which she was entitled through date of judgment, for unpaid benefits pursuant to 29 U.S.C. § 1132(a)(1)(B);

3. Prejudgment and postjudgment interest;

4. An Order requiring the Plan or appropriate Plan fiduciary to pay continuing benefits in the future so long as Plaintiff remains disabled under the terms of the Plan.

5. An Order requiring Plan or appropriate Plan fiduciary to provide Plaintiff with any other employment benefits to which she would be entitled pursuant to a finding that she is disabled under the Plan or under any other employee welfare benefit plan;

6. Plaintiff's reasonable attorney fees and costs; and

7. Such other relief as this court deems just and proper.

**On Plaintiff's Second Cause of Action:**

8. A finding in favor of Plaintiff against Defendant;

9. An Order requiring the Plan or appropriate Plan fiduciary to reinstate her life insurance benefits and pay continuing benefits in the future so long as Plaintiff remains disabled under the terms of the Plan.

10. Plaintiff's reasonable attorney fees and costs; and

11. Such other relief as this court deems just and proper.

Plaintiff further requests that the Court order Defendants to provide to Plaintiff with a bound copy of the ERISA record consecutively paginated.

Dated this 28th day of January, 2025.

Respectfully submitted,

ERIC BUCHANAN & ASSOCIATES, PLLC
ATTORNEYS FOR PLAINTIFF


BY: */s/ Kaci D. Garrabrant*
Kaci D. Garrabrant (BPR #039026)
Hudson T. Ellis (BPR #28330)
kgarrabrant@buchanandisability.com
ellish@buchanandisability.com
414 McCallie Avenue
Chattanooga  TN  37402
(423) 634-2506
FAX:  (423) 634-2505